IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>BRYAN MEPPELINK,<br><br>　　　　Defendant. | Case No. 11-MJ-132<br><br>ORDER FOR PRETRIAL<br>DETENTION |

On the 20th day of June, 2011, this matter came on for hearing on the Government's request to have the Defendant detained prior to trial. The Government was represented by Assistant United States Attorney Anthony Russell Morfitt. The Defendant appeared personally and was represented by his attorney, Jill M. Johnston.

## I. RELEVANT FACTS AND PROCEEDINGS

On June 14, 2011, Defendant Bryan Meppelink was charged by Criminal Complaint (docket number 2) with being a domestic abuser in possession of a firearm. At the initial appearance on June 16, 2011, the Government requested Defendant be detained pending further proceedings. A detention hearing was scheduled on June 20, 2011.

At the hearing, Special Agent Timothy Hunt of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") testified that on March 20, 2011, law enforcement officers were called to the home of Rosemary Meppelink, Defendant's mother, in Tama, Iowa. At that time, Defendant was living with his mother and his brother, Levi Meppelink. Rosemary Meppelink reported to authorities that Defendant had assaulted his brother, and had then gone to his room. Ms. Meppelink alerted officers to the fact that Defendant had "a lot" of firearms in his bedroom.

1

When officers proceeded to the bedroom, the door was closed. After the officers knocked, Defendant asked "who is there," and officers heard a firearm being "racked" – *i.e.*, a round being inserted into the firing chamber.[1] After the officers identified themselves, Defendant asked "what do you want," and the officers told him they wanted him to come out and speak with them. The officers then heard what sounded like another firearm being "racked." Eventually, Defendant came to the door, armed with a pistol which was cocked. The officer told Defendant to put the gun down, but he did not comply and instead went back into the bedroom. The officer could see Defendant standing in the bedroom with a gun in his hand, and the officer then "backed away." Shortly after that time, Defendant said that he "wouldn't do anything" and the officers entered the bedroom. Defendant was sitting, holding a handgun, with another handgun in a holster on his lap. Defendant was then taken into custody. Defendant "resisted" leaving the house and also resisted being placed in the patrol car.

A subsequent search of Defendant's bedroom found two rifles, one shotgun, and five handguns. Rosemary Meppelink told officers that two of the handguns were hers. According to Ms. Meppelink, she put all of the guns in storage because Levi Meppelink had recently been convicted of a felony and could not be "around" firearms. Ms. Meppelink believed that Defendant had retrieved the guns from storage. When subsequently interviewed, Defendant told Special Agent Hunt that the long guns were his, but that the handguns were owned by his mother. Defendant also told Hunt that his state court attorney had told him that his previous conviction for assaulting his wife did not disqualify him from possessing a firearm.

According to the pretrial services report, Defendant is 21 years old, divorced, and has two children. He was briefly in the United States Army, but was discharged for mental health reasons. According to Defendant, he has been diagnosed with bipolar

---

[1] Special Agent Hunt testified that the sound could also reflect a round being removed, but that in this case it was his understanding that the firearms were subsequently found with rounds in the chambers.

2

disorder, although he apparently has received differing diagnoses. Defendant was hospitalized at the Cherokee Mental Health Institute for about one month in early 2010, after he attempted to commit suicide by crashing a vehicle. He has been prescribed medication for his mental health issues, but told the pretrial services officer that he has not been taking the medication.

Although he is only 21 years old, Defendant has four convictions for assault and two convictions for "disorderly conduct, fighting or violent behavior." Defendant has also been convicted of trespass, operating a motor vehicle while intoxicated, and for twice violating a no-contact order.

Defendant's first conviction of assault arises from an incident on June 18, 2008, where he allegedly loaded and discharged a shotgun approximately two feet from the head of the victim. His second conviction for assault follows an incident on December 6, 2009, when Defendant allegedly assaulted his wife, Renetta Meppelink.

On January 16, 2010, while the December 2009 assault was pending, Defendant was arrested for operating while intoxicated. He failed to appear for a pretrial conference in April, and a warrant was issued for his arrest.

On March 1, 2010, while the December 2009 assault charge was pending, Defendant was arrested for violating a no-contact order and domestic abuse assault. Again, the victim was Renetta Meppelink. Defendant was sentenced on the new charges on March 25, 2010. Two days later, on March 27, 2010, Defendant was again arrested for violating the no-contact order.

Following the incident on March 20, 2011, which gives rise to the instant federal charge, Defendant was charged in state court with domestic abuse assault, and a second count of assault. He was sentenced to 365 days in jail, with all but 81 days suspended. It is the Court's understanding that Defendant was arrested on the federal charge shortly after being released from jail on the state charges.

## II. DISCUSSION

The release or detention of a defendant pending trial is governed by the Bail Reform Act of 1984, 18 U.S.C. § 3142. In *United States v. Salerno*, 481 U.S. 739 (1987), the United States Supreme Court upheld the constitutionality of the Bail Reform Act of 1984, while noting that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Id.* at 755.

### A. Legal Standard to be Applied

If the government moves to have a defendant detained prior to trial, the court must undertake a two-step inquiry. *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988). The Court must first determine by a preponderance of the evidence that the case involves an offense listed in 18 U.S.C. § 3142(f)(1), or that the defendant presents certain risk factors, as identified in § 3142(f)(2). *Id.* Once this determination has been made, the court then determines, pursuant to § 3142(e), whether any condition or combination of conditions will reasonably assure the defendant's appearance at trial and the safety of the community. *Id.*

Regarding the first step, pretrial detention is not authorized unless the Court finds that at least one of seven enumerated circumstances is applicable. 18 U.S.C. § 3142(f). The first five enumerated circumstances refer to "offense types," such as crimes of violence, offenses punishable by life imprisonment, serious drug offenses, felonies committed by repeat offenders, and felonies involving minor victims or guns. 18 U.S.C. § 3142(f)(1)(A-E). The last two enumerated circumstances where a hearing is authorized involve "risk factors," such as a serious risk of flight, or a serious risk the defendant will obstruct justice. 18 U.S.C. § 3142(f)(2)(A-B).

Regarding the second step, if following a hearing "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," then the judicial officer must order the defendant detained pending the trial. 18 U.S.C. § 3142(e). A

finding that no condition or combination of conditions will reasonably assure the safety of the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f). A finding that no condition or combination of conditions will reasonably assure the defendant's appearance, however, must only be established by a preponderance of the evidence. *United States v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985).

In determining whether any condition or combination of conditions will reasonably assure the defendant's appearance as required and the safety of the community, the Court must take into account the available information concerning (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including (a) the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, and (b) whether, at the time of the current offense or arrest, the defendant was on probation, parole, or other pretrial release; and (4) the nature and seriousness of the danger to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). *See also United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003).

### B. Analysis

Turning to the facts in the instant action, Defendant is charged with being a domestic abuser in possession of a firearm. Accordingly, regarding the first step in the analysis, the Court finds that detention is authorized pursuant to § 3142(f)(1)(E).

Regarding the second step, the circumstances surrounding the instant charge are particularly troubling. After authorities were called to Defendant's residence, he did not immediately surrender to police, but instead armed himself with two handguns. In fact, the evidence suggests that Defendant "racked" a round into the chamber of each handgun after being informed that the officers wanted to speak with him. The weight of the evidence against Defendant is strong. There is no doubt Defendant was in possession of

firearms on March 20, 2011, and it appears undisputed that his wife was the victim of an assault which resulted in a conviction on August 6, 2010.

Defendant has a history of mental health problems. He was hospitalized after attempting suicide and admitted that he has not been taking his medication. Defendant also has a substantial record of assaultive behavior, particularly considering that he is only 21 years old. On one occasion, Defendant loaded and discharged a shotgun near the head of a victim. Defendant has violated the terms of a no-contact order on at least two occasions, and the Court has no confidence that he would follow any conditions of release which may be established. Given Defendant's instability, his assaultive record, his mental health history, and the circumstances of this offense, the Court believes that his release would pose a danger to the community.

Based on the legal standards set forth above, and considering the evidentiary factors found in 18 U.S.C. § 3142(g), the Court finds the Government has met its burden of proving by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community if Defendant is released. Therefore, pursuant to 18 U.S.C. § 3142(e), the Court concludes that Defendant should be detained prior to trial. Defendant was advised in open court of his right to file a motion with the District Court for revocation or amendment of this Order.

### III. ORDER

IT IS THEREFORE ORDERED as follows:

1. The Defendant is committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.

2. The Defendant shall be afforded reasonable opportunity for private consultation with counsel.

3. On order of a Court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the Defendant is

confined shall deliver the Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

4. The time from the Government's oral motion to detain (June 16, 2011) to the filing of this Ruling (June 20, 2011) shall be excluded in computing the time within which the trial must commence pursuant to the Speedy Trial Act. 18 U.S.C. § 3161(h)(1)(D).

DATED this 20th day of June, 2011.

_____
JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA